205 So.2d 17 (1967)
Harry NEEDELMAN, M.D., Appellant,
v.
DADE COUNTY MEDICAL ASSOCIATION, a Florida Corporation, Not for Profit, Appellee.
No. 66-1011.
District Court of Appeal of Florida. Third District.
December 12, 1967.
Rehearing Denied January 3, 1968.
L.J. Cushman, John W. Prunty, Miami, for appellant.
Kelly, Paige, Black & Black, Miami, for appellee.
Before PEARSON, BARKDULL and HENDRY, JJ.
PEARSON, Judge.
Appellant, Harry Needelman, is a medical doctor practicing in Dade County. He was the plaintiff in an action for declaratory relief in which he sought a declaration that the Dade County Medical Association, Inc. had wrongfully excluded him from membership in the Association. Appellee, Dade County Medical Association, Inc., answered and alleged that appellant's membership was properly terminated upon his conviction of a crime involving moral turpitude. This appeal is from the final decree entered after trial in which the chancellor found for the defendant, Medical Association.
The chancellor's findings constitute a summary of the factual situation upon which the appeal is based. They are as follows:
"The Plaintiff is a doctor of medicine and was a member in good standing of the *18 Defendant medical association until October 17, 1960, when, following receipt by Defendant of a certified copy of a denial by the Supreme Court of the United States of certiorari to review the conviction of the Plaintiff on a charge of having violated the Harrison Act in the sale or dispensing of narcotics, which is a felony, the Defendant Association notified the Plaintiff of the implementation of a By-Law which terminates membership of any member convicted, with finality, of a crime involving moral turpitude.
"The Plaintiff requested a hearing and the request was granted. The Plaintiff appeared at the hearing, accompanied by counsel, and made an oral statement which was in no way limited in scope by the hearing body. At the close of the hearing, the Committee confirmed the expulsion. Plaintiff then appealed the decision of Defendant Association to The Florida Medical Association, without success.
"Subsequently, Plaintiff applied for membership in the Defendant Association, de novo; but, failed to meet the then existing requirement of graduation from an accredited medical school.
"Plaintiff then filed this suit for declaratory decree alleging:
a. That conviction on a charge of a violation of the Harrison Act in the sale of narcotics does not involve moral turpitude.
b. That Plaintiff received a Presidential pardon which wiped out guilt.
c. That Plaintiff was not given a hearing and due process was lacking.
d. That hospital staff privileges are dependent upon membership in the Defendant Association and such privileges have been denied to the Plaintiff."
The following are excerpts from the minutes of the hearing which was granted subsequent to the automatic termination of membership.
"The physician read a prepared statement and asked, (1) That his membership be reinstated since his conviction is not final; and (2) that he be given an opportunity to demonstrate the `mockery of justice' in his trial and that the DCMA support him in obtaining justice. The statement and other material submitted will be made a part of his file.'
It was further reported in the minutes;
`Motion was carried that the executive committee has granted this member the courtesy of a hearing, as he requested, but the committee stands with the action taken in accord with Chapter I, Art. XVI of the By-Laws. However, should the physician be granted a new trial, consideration of the matter will be reopened." [Emphasis supplied]
The appellant presents two points upon appeal. The first is as follows:
"POINT ONE
CAN THE MEMBERSHIP OF AN INDIVIDUAL IN A NON-PROFIT PROFESSIONAL CORPORATION BE AUTOMATICALLY TERMINATED BY THE CORPORATION WITHOUT NOTICE AND AN OPPORTUNITY FOR A HEARING BEING ACCORDED TO THE INDIVIDUAL INVOLVED PRIOR TO THE ACTION OF TERMINATION?"
Appellant's right to a hearing before termination of his membership in a non-profit association is based upon § 617.10 Fla. Stat. (1965), F.S.A. The pertinent provision of subsection (2) of the statute is as follows:
"* * * provided, that before his membership shall cease against his consent he shall be given an opportunity to be heard, unless he is absent from the county where the corporation is located * * *."
*19 In dealing with the contention by appellant, Harry Needelman, that he was entitled to reinstatement because his original expulsion had been under a by-law which provided automatic termination[1] of membership upon conviction of a crime involving moral turpitude, the chancellor found as follows:
"4. That a hearing was granted to Plaintiff; he was accompanied by counsel and was not limited in his presentation; and at no time during his presentation did he deny that he had been convicted of a felony as charged by the Association. The Court finds that the requirements of Sec. 617.10, Florida Statutes, that:
`provided, that before his membership shall cease against his consent he shall be given an opportunity to be heard. * * *'
were met and due process afforded to him."
Thus, we are squarely presented with the legal question of whether the requirements of § 617.10 Fla. Stat., F.S.A. are met by a hearing granted after the member's membership has been terminated against his consent. We think that the statute is explicit and that its terms were not complied with in this case.
Section 617.10, Fla. Stat., F.S.A. has been interpreted and applied in LaGorce Country Club v. Cerami, Fla. 1954, 74 So.2d 95. In that case the Supreme Court affirmed a final judgment in mandamus which compelled the reinstatement of a member whose membership in the LaGorce Country Club had been terminated without a hearing.
In reaching this decision the Supreme Court held:
"* * * In sum, under our statute if the by-laws of a club require that `any right, interest or privilege' shall cease with membership, the proviso is applicable and an opportunity to be heard shall be accorded a member before expulsion. If there were any room for a contrary interpretation, and it is obvious that there is not, such interpretation would be in derogation of the common law. This is not to suggest that the influence of the common law is necessary to the result we reach, which is dictated by emphatic statutory language, but it is worth observing that our statute tends to codify or perhaps to extend the common law rule rather than to oppose it. It is evident that the legislature intended jealousy to guard the right of a member to a hearing before termination of his membership over his protest, because the proviso of subsection (2) cannot fail to come into play under any ordinary set of club bylaws."
* * * * * *
"* * * Our statute, as we have seen, places a duty upon the club to afford the member an opportunity to be heard, of which he may or may not avail himself, and imposes no requirement that the member demand a hearing. See Loubat v. LeRoy, 40 Hun, N.Y., 546, 552. Cerami's action was promptly brought, and the allegations of his petition, which were sufficient under the statute, gave the club full notice of his position. * * *" [Emphasis supplied]
In Florida Bar v. Fussell, Fla. 1965, 179 So.2d 852, the Supreme Court considered the case of an attorney who was suspended from the practice of law by the Florida Bar on the basis of a federal court conviction of a felony. The Board of Governors of the Bar Association had suspended the attorney without according him an opportunity to be heard in person and present witnesses. The court applied the requirements of due process to reach a holding that the attorney must be given notice and an opportunity *20 for a hearing before the penalty is invoked.
The import of the statute, and both the LaGorce Country Club and the Florida Bar v. Fussell opinions, seems to be that an association by-law which provides for automatic expulsion upon conviction of an offense involving moral turpitude is invalid.[2] It seems clear that the action of the appellee, Medical Association, in the instant case, upon its hearing after expulsion of the appellant, was to stand upon its by-law. If this is true, then no actual hearing upon the facts concerning the propriety of appellant's expulsion was ever held.[3]
Since the by-law providing for automatic expulsion is contrary to the statutory law, it follows that a hearing prior to expulsion may be a valuable right. Advance notice to the member gives him time to prepare his defense, to seek the advice of others, and to take any appropriate action to halt the proceedings or to delay the proceedings to a more convenient time. Even though the basic facts of the member's conduct may not be in doubt, other facts involving matters of extenuating circumstances or motive may bear on the ultimate decision and such facts might escape the attention of the forum without some defensive presentation by the accused.
There is a great deal of logic in the trial court's decision because the statute does not prescribe the nature or the extent of the hearing to be provided; nevertheless, we think that in dealing with the express provisions of a statute we may not vary its terms.
Having reached the conclusion that the decree must be reversed, we do not consider appellant's second point. The decree is reversed with directions to enter a decree directing the appellee, Dade County Medical Association, to reinstate appellant to membership in the association.
Reversed.
HENDRY, Judge (dissenting).
I respectfully dissent from the majority opinion for the following reasons:
1. That the procedural defect, if any, of revoking Dr. Needelman's membership in the medical association was remedied by the hearing subsequent to the expulsion from the association;
2. Appellant was granted a hearing on October 24, 1960, two weeks subsequent to his being notified of his expulsion. At the close of the hearing, the committee announced to the doctor that his expulsion was confirmed. Thereafter the doctor submitted several applications for reinstatement of his membership and, at the suggestion of the association, applied as a new member. All of such applications were rejected. It was not until June of 1965, almost five years after the hearing, that he sought to have the court determine if the hearing was sufficient to comply with the statute. This lapse of time, in my opinion, estopped him from urging at *21 this late date that the hearing in which he participated was insufficient as a matter of law. Cf. Greene v. Alexander Film Co., Fla. 1953, 65 So.2d 53.
I would affirm.
NOTES
[1] The appellee had informed appellant by letter dated October 17, 1960, that his membership was terminated as of October 10, 1960. The subsequent hearing was held on October 24, 1960.
[2] For other Florida cases dealing with the requirement of notice before termination of membership, see Tropical Park v. Ratliff, Fla. 1957, 97 So.2d 169; Wright v. Roller, Fla.App. 1959, 111 So.2d 485; Florida State Board of Medical Examiners v. James, Fla.App. 1965, 175 So.2d 815. See also Virgin v. American College of Surgeons, 1963, 42 Ill. App.2d 352, 192 N.E.2d 414; Leland v. Kansas State Board of C. Examiners, 1954, 176 Kan. 334, 270 P.2d 255.
[3] Although not controlling for the disposition of this appeal, certain factual matters should be noted. Following the conviction and unsuccessful appeals, the appellant was called for a hearing before the State licensing board. He received a severe reprimand, but retained his license to practice medicine in the State of Florida. One of the effects of the termination of membership was the loss of staff privileges at certain hospitals throughout Dade County. The action of the hospitals was taken following notification from the Dade County Medical Association that Dr. Needelman was no longer a member.