63 P.3d 809 (2003)
115 Wash.App. 396
Lois C. STRANBERG and Leonard W. Lasz, Appellants,
v.
Alys O. LASZ; Theodore K. Odell and Ronald N. Odell, individually and as trustees of the Alys O. Lasz Living Trust, Respondents.
No. 20712-9-III.
Court of Appeals of Washington, Division 3, Panel Eight.
February 6, 2003.
*810 Joseph Nappi, Jr., Huppin, Ewing, Anderson, Spokane, for Appellants.
Mary E. Schultz, Amy L. Rimov, Robert E. Kovacevich, Spokane, for Respondents.
KURTZ, J.
Walter and Alys Lasz were married in July 1944; the couple had no children as the result of this marriage. After Walter Lasz died in 2000, his niece, Lois Stranberg, and his nephew, Leonard W. Lasz, (the "Stranbergs"), commenced this action when Alys Lasz and her sons (collectively referred to as the "Odells") refused to probate Walter's will and transferred all of the family farm property into the Alys O. Lasz Living Trust. The Odells took the position that there was no property to probate because all of the property passed to Alys Lasz under a 1962 community property agreement. The trial court granted summary judgment in favor of the Odells, concluding that Walter and Alys Lasz did not evince a mutual intent to abandon the community property agreement when they later executed reciprocal wills. The Stranbergs appeal. We conclude that because there is no conflict between the provisions of the community property agreement and the subsequent reciprocal wills, the Laszes did not evince a mutual intent to rescind the community property agreement when they executed the reciprocal wills. For that reason, we affirm the judgment of the trial court.

FACTS
Walter and Alys Lasz were married on July 11, 1944. The couple had no children as the result of this marriage, but Alys had two children, Theodore and Ronald Odell, from a previous marriage.
Walter Lasz died on December 28, 2000. After Walter's death, his niece, Lois C. Stranberg, and his nephew, Leonard W. Lasz, commenced this action when Alys and her sons refused to probate the Last Will of Walter Lasz. The dispute in this action centers on the disposition of the Lasz family farm. Rather than probate the will, the Odells set up the Alys O. Lasz Living Trust and transferred all of the farm property to the trust. The Odells contend that there was no property to probate because all of the property passed to Alys Lasz under a community *811 property agreement. The Stranbergs contend that the property should pass to them under Walter Lasz's will.
In October 1962, Walter and Alys Lasz executed an "Agreement as to Status of Community Property After Death of One of the Spouses." Clerk's Papers (CP) at 11. This agreement provides for the disposition of community property following the death of one spouse.
In 1991, 1995, and 1996, Walter and Alys Lasz executed reciprocal wills. Article IV, entitled "Residuary Estate," of the will executed by Walter Lasz in 1996 provides:
I give all my residuary estate, being all property, real and personal, wherever situate, in which I have any interest at the time of my death and not otherwise disposed of, as follows:
A. If my wife, Alys, survives me, to my wife, Alys as Trustee, in trust, to be held, administered and distributed as provided in Article V hereof; or
B. If my wife, Alys, does not survive me, then as follows:
CP at 16 (emphasis added).
Under the language of Article IV and Article V of the 1991, 1995, and 1996 reciprocal wills, Lois Stranberg and Leonard Lasz are the beneficiaries of the residuary of each estate as to the farmland, and the primary remaindermen of the farmland under the first-to-die testamentary trust.
The residuary estate provision, Article IV, of the 1991, 1995, and 1996 reciprocal wills includes the description of the farm property to pass to Lois Stranberg and Leonard Lasz. Various changes were made to the 1996 reciprocal wills. Those changes included: (1) the removal of Raymond P. Lasz from the specific bequest section of Article III; and (2) the designation of additional farmland to be distributed to Leonard W. Lasz under Article IV.
After commencing this action, the Stranbergs sought to take the deposition of Robert Lamp, the attorney who prepared the reciprocal wills for Alys and Walter Lasz. The trial court denied the Odells' motion to quash and motion for a protective order to prevent the deposition of Mr. Lamp. At his deposition, Mr. Lamp testified that the Laszes did not tell him about the existence of the community property agreement. Mr. Lamp further explained that had he known of the community property agreement, he would have revoked it and that he would not have drafted the reciprocal wills the way that he had without first revoking the community property agreement.
The Odells moved for summary judgment requesting the court to determine as a matter of law that the residuary estate provisions of the reciprocal wills were inapplicable to the property passed pursuant to the community property agreement. In response to this motion, the Stranbergs requested a continuance for further discovery. In addition, the Stranbergs filed the affidavit of Lois Stranberg and the affidavit of Leonard Lasz. According to these affidavits, Walter and Alys Lasz had declared their intention that the farmland (described in the reciprocal wills) pass to Lois Stranberg and Leonard Lasz.
The court refused to allow additional discovery and granted summary judgment in favor of the Odells. The Stranbergs appeal.

ANALYSIS
Standard of Review. When reviewing a summary judgment, this court undertakes the same inquiry as the trial court and considers all facts and reasonable inferences in the light most favorable to the nonmoving party. Mountain Park Homeowners Ass'n v. Tydings, 125 Wash.2d 337, 341, 883 P.2d 1383 (1994). Rules of contract construction apply to community property agreements. In re Estate of Wahl, 31 Wash. App. 815, 818, 644 P.2d 1215 (1982), aff'd, 99 Wash.2d 828, 664 P.2d 1250 (1983). The question of whether an ambiguity exists in a contract is an issue of law reviewed de novo. State v. Nason, 96 Wash.App. 686, 691, 981 P.2d 866 (1999), cert. denied, 531 U.S. 831, 121 S.Ct. 85, 148 L.Ed.2d 46 (2000). A court may look to parol evidence to explain an ambiguity in a contract. Id. A provision is not ambiguous merely because the parties suggest opposing meanings. Mayer v. Pierce County Med. Bureau, Inc., 80 Wash. *812 App. 416, 421, 909 P.2d 1323 (1995). However, the interpretation of an unambiguous contract is a question of law. Id. at 420, 909 P.2d 1323.
Alys and Walter Lasz executed a community property agreement in 1962. Because community property agreements are treated like contracts, the general rules of contract rescission and abandonment apply. Higgins v. Stafford, 123 Wash.2d 160, 165, 866 P.2d 31 (1994) (citing In re Estate of Lyman, 7 Wash.App. 945, 948, 503 P.2d 1127 (1972), aff'd, 82 Wash.2d 693, 512 P.2d 1093 (1973)). To abandon a community property agreement, the parties must clearly demonstrate a mutually-manifested intention to abandon the agreement. Higgins, 123 Wash.2d at 165, 866 P.2d 31. To make this determination, courts will give great weight to evidence of the parties' intent by examining the wording of the written agreement and the circumstances surrounding the transaction, including the subject matter of the transaction and the subsequent acts of the parties. Id. (citing In re Estate of Brown, 29 Wash.2d 20, 28, 185 P.2d 125 (1947)).
Are the Wills and the Community Property Agreement Inconsistent? The Stranbergs' primary argument is that a mutual intent to abandon the community property agreement is established because the language of the three subsequent reciprocal wills is inconsistent with the language of the community property agreement.
Generally, two contracts are in conflict if the legal effect of the subsequent contract rescinds the earlier contract and becomes its substitutemaking the subsequent contract the only agreement between the parties covering that same subject matter. Higgins, 123 Wash.2d at 165-66, 866 P.2d 31 (citing Bader v. Moore Bldg. Co., 94 Wash. 221, 224, 162 P. 8 (1917)). The community property agreement here is not inconsistent with the wills as none of the reciprocal wills rescinds the community property agreement and the community property agreement and the wills can be read together. In other words, contrary to the assertions of Ms. Stranberg, none of the wills has the legal effect of becoming the only agreement between the parties with regard to the disposition of the farmland in question.
The documents here are not in conflict because they can be read together. The community property agreement provides for the disposition of community property at the death of one spouse. Walter Lasz's 1996 will has a residuary estate clause that applies to property "not otherwise disposed of." CP at 16. The residuary estate clause then has two different subsections that apply depending on whether Alys survives him. The problem here is that if Alys survived him, the community property agreement ensured that the farmland described in subsection B would not pass to the residuary estate. Hence, if Walter predeceased Alys, subsection B would have no effect. However, if Alys predeceased Walter, the farmland would pass to Walter under the community property agreement and would then pass to the Stranbergs under subsection B of the residuary estate clause.
The Stranbergs maintain that the operation of these two documents is inelegant. We agree. Reading these two documents together results in a disposition where the residuary clause is operable to pass the property to the Stranbergs under two circumstances: (1) if Alys predeceased Walter, and the property was part of his residuary estate at the time of his death, or (2) if Walter predeceased Alys, and the property was part of her residuary estate at the time of her death. Simply put, the wills governed the disposition of property that was not passed by the community property agreement.
Read together, the wills and the community property agreement permitted Alys and Walter to retain significant control over the disposition of the property until the time of their deaths. For example, when both Alys and Walter were alive, they had the option of revoking the community property agreement and ensuring that the property would pass under the residuary estate clause. Alternatively, Alys and Walter may have intended that the community property agreement would remain in effect and that each of them would retain the authority to dispose of the property prior to death.
*813 Relying on Higgins, the Stranbergs maintain that the wills and the community property agreement are inconsistent. However, the wills in Higgins do exactly what the wills here do not. In Higgins, as here, the community property agreement provided that upon the death of one spouse, the deceased spouse's property would vest in fee simple in the survivor. See Higgins, 123 Wash.2d at 161, 866 P.2d 31. But, in contrast to the reciprocal will provisions here, the mutual wills and underlying agreements in Higgins prevented the surviving spouse from changing their agreed-upon testamentary disposition of the property. Id. Hence, in Higgins, the court concluded that because the community property agreement and the will agreement conflictedand could not coexistthe will agreement rescinded the community property agreement. Id. at 172-73, 866 P.2d 31. Here, the documents do not conflict, but merely grant the surviving spouse the option of changing the testamentary disposition of the property.
In short, Alys and Walter Lasz did not evince a mutual intent to rescind the community property agreement when they executed the reciprocal wills.
The Stranbergs next argue that the court may consider parol evidence to determine the intent of the wills with regard to the rescission of the community property agreement.
"`The primary duty of a court when interpreting a will is to determine the intent of the testator.'" In re Estate of Curry, 98 Wash.App. 107, 113, 988 P.2d 505 (1999) (quoting In re Estate of Niehenke, 117 Wash.2d 631, 639, 818 P.2d 1324 (1991)), review denied, 140 Wash.2d 1016, 5 P.3d 8 (2000). This intent should, if possible, be garnered from the language of the will itself. Estate of Curry, 98 Wash.App. at 113, 988 P.2d 505 (citing In re Estate of Campbell, 87 Wash.App. 506, 510, 942 P.2d 1008 (1997)). The will should be considered in its entirety and effect given to every part; however, extrinsic evidence of surrounding facts and circumstances may be admitted to explain the language of a will when there is uncertainty as to the testator's intention. Estate of Curry, 98 Wash.App. at 113, 988 P.2d 505.
The problem here is that considering the reciprocal wills in their entirety, there is no uncertainty as to the intent of Alys and Walter Lasz in that there is no mutually-manifested intent to abandon the community property agreement. Significantly, the wills acted only on property not disposed of by the community property agreement. See Wilkes v. O'Bryan, 98 Wash.App. 411, 416-17, 989 P.2d 594 (1999), review denied, 140 Wash.2d 1027, 10 P.3d 407 (2000). In effect, the Stranbergs seek to change the standard of review. They suggest that extrinsic evidence may be used to create uncertainty as to whether Alys and Walter Lasz intended to rescind the community property agreement in the reciprocal wills. This is not the standard. To prevail, the Stranbergs must clearly demonstrate a mutually-manifested intent to abandon the agreement. The Stranbergs do not satisfy this standard. The court correctly granted summary judgment.
Evidentiary Question Raised by the Odells. Did the trial court err by considering conclusory statements by Mr. Lamp and evidence barred by the deadman's statute?
The Odells contend that the inquiry of this court should be limited to evidence that would be admissible at trial. In other words, they assert that this court should not consider the conclusory statements by Mr. Lamp and the evidence barred by the deadman's statute. These arguments are without merit for several reasons. First, this matter can be resolved by examining the documents in question and the court need not consider the evidence objected to by the Odells. Second, the court should not consider conclusory statements submitted by either party. Blomster v. Nordstrom, Inc., 103 Wash.App. 252, 260, 11 P.3d 883 (2000). Third, the deadman's statute may be waived by the failure to object to the evidence, by cross-examination that is not within the scope of direct examination, or by presenting testimony favorable to the estate. Botka v. Estate of Hoerr, 105 Wash.App. 974, 980, 21 P.3d 723 (2001). There is nothing in the record indicating that the Odells objected to the evidence they now seek to exclude under the deadman's statute.
*814 Motion for a Continuance. Did the trial court err by denying the Stranbergs' motion for a continuance to allow for additional testimony?
The denial of a continuance requested under CR 56(f) is reviewed for an abuse of discretion. Tellevik v. Real Property Known as 31641 W. Rutherford St., 120 Wash.2d 68, 90, 838 P.2d 111 (1992); 845 P.2d 1325. A court may deny a continuance if: (1) the requesting party fails to offer a good reason for the delay in obtaining the desired evidence, (2) the requesting party fails to explain what evidence it would establish through additional discovery, or (3) the desired evidence will not raise a genuine issue of material fact. Id. (citing Turner v. Kohler, 54 Wash.App. 688, 693, 775 P.2d 474 (1989)).
The court here did not err by denying the Stranbergs' request for a continuance. Additional testimony concerning the reciprocal wills would not raise a genuine issue of fact.
The Stranbergs suggest that a later will was prepared by attorney Julie Harrington, and that additional time is required to obtain information concerning this will. However, Leonard Lasz states in his affidavit that: "I was also informed by Alys Lasz that a 1998 will was executed by attorney Julie Harrington which, although similar to the 1995 and 1996 wills, redistributed 80 acres to Lois Stranberg." CP at 245. This evidence is insufficient to establish that the additional evidence will raise a genuine issue of fact as to whether the Laszes evinced a mutual intent to rescind the community property agreement.
The trial court did not err by denying the motion for a continuance. We affirm the judgment of the trial court.
I CONCUR: BROWN, C.J.
SWEENEY, J. (dissenting).
I dissent, but with great respect since I can easily see how the majority arrived at its conclusion. But the object of this judicial exercise both in the trial court and here is, or at least should be, to ascertain and give effect to the intentions of Walter and Alys Lasz. Higgins v. Stafford, 123 Wash.2d 160, 165, 866 P.2d 31 (1994). To glean that intent, we must examine the wording of the written agreements viewed as a whole in light of all the surrounding circumstances, including the subject matter and subsequent conduct of the parties. In re Estate of Brown, 29 Wash.2d 20, 28, 185 P.2d 125 (1947). When the documents here are so viewed, I conclude that a jury might find that Walter and Alys Lasz intended to abandon a community property agreement executed over 30 years earlier. In other words, there is a question of fact here. Summary judgment was, therefore, erroneous.
Walter and Alys Lasz drafted three separate sets of reciprocal wills devising specific tracts of farm property to specific beneficiaries. The effect of enforcing a 1962 community property agreement is to thwart the intentions manifested for the distribution of this farm property.
This result is, for me, even more compelling in this post Berg v. Hudesman era. Berg v. Hudesman, 115 Wash.2d 657, 801 P.2d 222 (1990). Berg ushered in an era in which the court's focus could truly be on the intention of the parties to an agreement or its subsequent revocation, rather than the formalistic, so-called "plain meaning" of written documents. Id. at 663, 801 P.2d 222 ("`The cardinal rule with which all interpretation begins is that its purpose is to ascertain the intention of the parties.'") (quoting Corbin, The Interpretation of Words and the Parol Evidence Rule, 50 CORNELL L. QUAR. 161, 162 (1965)); In re Estates of Wahl, 99 Wash.2d 828, 830-31, 664 P.2d 1250 (1983); In re Estate of Curry, 98 Wash.App. 107, 113, 988 P.2d 505 (1999). And, just as importantly, the intent (here, the intent to rescind the earlier community property agreement) need not be clearly stated. Higgins, 123 Wash.2d at 168, 866 P.2d 31.
The principles guiding review of this appeal are set out in Higgins. The alteration, amendment, and revocation provisions of the community property agreement statute (RCW 26.16.120) are not interpreted narrowly. Higgins, 123 Wash.2d at 165, 866 P.2d 31. Mutual intent to rescind a community property agreement must be demonstrated. *815 Id. at 168, 866 P.2d 31. But that intent need not be expressly stated. While unilateral acts inconsistent with the agreement are not enough, mutual acts having the effect of rescinding the agreement are sufficient. Id.
The question for me, then, is whether we can say as a matter of law, looking at all of the facts and circumstances surrounding these transactions, that Walter and Alys Lasz did not intend to mutually revoke this over-30-year-old community property agreement. To state the question is to answer it. Of course, they did. There would be no reason to make bequests of specifically described property otherwise. In fact, the wills would have been unnecessary.
Alys Lasz, Theodore Odell, and Ronald Odell (hereafter Odells) rely heavily on the holding in Higgins for the proposition that the wills here do not revoke the earlier community property agreement, as the wills did in Higgins. I do not read Higgins so broadly. The holding in Higgins was that the showing there was sufficient as a matter of law. Higgins, 123 Wash.2d at 169, 866 P.2d 31. Again, the showing here may not be so overwhelming, but that just means it raises a question of fact.
Conduct alone may be enough to draw a fair inference that the parties intended to revoke the community property agreement:
In the absence of words, there must be conduct, or if there be both words and conduct, such words and conduct together must provide sufficient evidence from which a fair inference of their intention may be ascertained.
In re Estate of Lyman, 7 Wash.App. 945, 949, 503 P.2d 1127(1972), aff'd, 82 Wash.2d 693, 512 P.2d 1093 (1973).
In Lyman, the court refused to conclude that a will revoked a community property agreement. Id. at 951-52, 503 P.2d 1127. But there the court refused because a subsequent will by the husband did not manifest a mutual intent to abandon the community property agreement. It was a mere unilateral attempt at best:
The court expressly found that the execution by her husband of the September 18, 1970 will was not only without the benefit of legal counsel, but it was also without "the knowledge of his wife."
Id.
Again, what we are trying to do here is ascertain and give effect to the intentions of Walter and Alys Lasz at the time they drafted these three reciprocal wills. The wills here certainly accommodate the earlier community property agreement. But by simply concluding, legally as opposed to equitably, that the wills accommodate the old community property agreement, we do not do this.
A community property agreement is a contract and must be considered as such. Higgins, 123 Wash.2d at 165, 866 P.2d 31. But wills, trusts, and the probate of estates involve the superior court's equitable powers. See generally Ellis v. Schwank, 37 Wash.2d 286, 290, 223 P.2d 448 (1950); Tucker v. Brown, 20 Wash.2d 740, 804-05, 150 P.2d 604 (1944); In re Estate of Krause, 173 Wash. 1, 8-10, 21 P.2d 268 (1933); Bayer v. Bayer, 83 Wash. 430, 440, 145 P. 433 (1915).
The evidence here may not be so conclusive as to require summary judgment in favor of Lois Stranberg and Leonard Lasz (hereafter Stranbergs). But they have at least raised a genuine issue of material fact as to the intent of Walter and Alys Lasz when these wills were drafted. CR 56(c); Bowles v. Dep't of Ret. Sys., 121 Wash.2d 52, 62, 847 P.2d 440 (1993). The burden was on the moving partythe Odellsto demonstrate that there was no genuine dispute as to any material fact. City of Lakewood v. Pierce County, 144 Wash.2d 118, 125, 30 P.3d 446 (2001).
Again, I concede that it is technically possible to read these wills to accommodate the community property agreement. But that is not, or at least should not be, our focus. Our job, again, is to ascertain and give effect to the testator's intent. And, for me, it is clear that the intent of the wills was to revoke the 30-year-old community property agreement and to distribute the property so that the family farm remained in Mr. Lasz's family. There simply would be no other reason to draft three separate reciprocal wills spelling out in some detail the plans to keep the farm in Mr. Lasz's family.
*816 Between the two polar opposites of summary judgment in favor of the Odells and summary judgment in favor of the Stranbergs lies an arena of factual nuances and questions about what was intended.
Do the wills conflict with the earlier community property agreement? Arguably they do not. Can they be read together with the earlier community property agreement? Perhaps. But does this then conclusively suggestas a matter of lawthat these parties did not intend to revoke this earlier agreement? Not according to the lawyer who drafted the reciprocal wills. He did not even know about the earlier community property agreement. Clerk's Papers at 175-76.
In sum, "[a]s long as a mutual intent to abandon or rescind a prior community property agreement is adequately established, mutual wills can control over a prior community property agreement." Higgins, 123 Wash.2d at 172, 866 P.2d 31. And, as a necessary corollary, that is a question of fact, not a question of law. I would reverse the trial judge's decision to summarily dismiss the Stranbergs' suit and remand this case for trial on the dispositive disputed material factintent.