[No. 22046-0-III.   Division Three.   July 13, 2004.]

PARADISE ORCHARDS GENERAL PARTNERSHIP, *Appellant*, v. GEORGE FEARING, ET AL., *Respondents*.

508

*Mark A. Johnson, Sims G. Weymuller*, and *Donovan R. Flora* (of *Johnson & Flora, P.L.L.C.*), for appellant.

*J. Richard Creatura* (of *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim, P.L.L.C.*), for respondents.

BROWN, J. — Paradise Orchards (Paradise) sued its former lawyer, George Fearing, and his law firm (collectively Mr. Fearing) in Benton County, alleging he negligently prepared a remedies clause in an earnest money agreement involving the sale of Paradise's orchard. In previous litigation in Franklin County between Paradise and the buyer, a judge gave an interlocutory, unappealed ruling that the remedies clause did not allow specific performance, allegedly forcing Paradise to unfavorably settle with the purchaser before final judgment. The trial court held it was not bound by the previous ruling, reasoned specific performance was an available remedy, and dismissed. On appeal, Paradise contends collateral estoppel precluded the trial court from reinterpretation of the remedies clause. We disagree and affirm.

## FACTS

This legal malpractice dispute arises from a failed real estate transaction in which Mr. Fearing represented the seller, Paradise. In August 1997, Stormy Mountain Fruit Company offered to buy Paradise's apple orchard and crop. The original offer contained a standard remedy clause limiting the seller's remedy upon failure to close. After exchanging drafts, Mr. Fearing prepared an earnest money agreement (agreement) acceptable to both buyer and seller. The agreement contained the following remedies clause (paragraph 24):

> Upon any default by the buyer, under this earnest money agreement, seller shall have the right to immediately repossess the property [**interlineated part:** after providing buyer with 15 days written notice of default]. In such event, seller shall have the right to maintain for itself, and to sell on its behalf, keeping the proceeds thereof, of any crop on the property. Seller shall have no obligation to reimburse buyer for any of the earnest money deposit.

Ex. 2 at 7-8.

After the closing fell through, Paradise sued Stormy Mountain and others not parties here for specific perfor-

mance in the Franklin County Superior Court. After the summary judgment phase, Mr. Fearing ceased representing Paradise, apparently to facilitate his participation as a witness. In September 2000, the court interpreted the agreement and issued a three-sentence memorandum decision, ruling the agreement was a valid contract and Paradise's remedy was "limited by the provisions of Paragraph 24." Ex. 1. Paradise did not seek appellate review of the adverse ruling. Instead, Paradise compromised and settled with Stormy Mountain for $335,000. No findings, conclusions, or final judgment were entered.

In December 2000, Paradise filed a legal malpractice suit in Benton County against Mr. Fearing and others no longer in this suit. In March 2003, the parties entered two relevant stipulations. First, the parties agreed to a bench trial. Second, the parties agreed that the trial court would first determine whether it had legal authority to revisit the Franklin County court's ruling regarding paragraph 24 of the agreement.

The parties agreed that if the trial court revisited the ruling, it would then "determine whether or not the exclusive remedy in favor of Paradise Orchards against Stormy Mountain Fruit Company (Paragraph 24 of the Earnest Money Agreement) was repossession or whether repossession was additive to all other remedies under Washington law, including specific performance and money damages." Clerk's Papers (CP) at 20-21. The parties agreed that if the court determined "that repossession was additive to other remedies, including specific performance and money damages, then the Court will enter findings of fact and conclusions of law and enter judgment for the defendants against plaintiff on plaintiff's Complaint." CP at 21. Defendant's counterclaim is not an issue here.

On April 7, 2003, the trial court entered findings of fact and conclusions of law favoring Mr. Fearing. The trial court concluded collateral estoppel did not apply to the Franklin County court's ruling and against Mr. Fearing. "Since collateral estoppel does not apply, the Court has the right

and obligation to evaluate the correctness of [the Franklin County court's] ruling that the 'remedies clause' was an exclusive remedy and precluded plaintiff from recovering specific performance and/or money damages." CP at 14.

The trial court then concluded that the Franklin County court erred. "Because the parties did not specifically exclude all other remedies, the law implies that those remedies are not waived and may be pursued, in the alternative, to the stated right of repossession." CP at 14. The trial court supplemented that conclusion of law with the transcript of its oral ruling. "Based on the stipulation of the parties, since the Court has determined that repossession was additive to other remedies, including specific performance and money damages, the Court hereby enters judgment for the defendants and against plaintiff on plaintiff's complaint." CP at 14. The trial court denied Paradise's motions to vacate the judgment and for a new trial. Paradise appealed both the trial court's ruling on the merits and denial of its posttrial motions.

## ANALYSIS

### A. Collateral Estoppel

The issue is whether the doctrine of collateral estoppel barred the trial court from revisiting the memorandum decision of the prior court.

■ "To prove legal malpractice, the plaintiff must show (1) employment of the attorney (giving rise to the duty), (2) failure by the attorney to exercise ordinary skill and knowledge (breach of the duty), (3) proximate cause (causation), and (4) resulting loss to the client (damages)." *Kommavongsa v. Haskell*, 149 Wn.2d 288, 300, 67 P.3d 1068 (2003) (citing *Hizey v. Carpenter*, 119 Wn.2d 251, 830 P.2d 646 (1992)). Here, Mr. Fearing's duty to Paradise is not in dispute. The disputed issue of the meaning of paragraph 24 implicates primarily the causation element of Paradise's claim.

██ "Proximate cause consists of two elements: cause in fact and legal causation." *Nielson v. Eisenhower & Carlson*, 100 Wn. App. 584, 591, 999 P.2d 42 (2000) (citing *City of Seattle v. Blume*, 134 Wn.2d 243, 251, 947 P.2d 223 (1997)). "Cause in fact refers to the 'but for' consequences of the act, that is, the immediate connection between an act and an injury." *Blume*, 134 Wn.2d at 251-52. "The 'but for' test requires a plaintiff to establish that the act complained of probably caused the subsequent disability." *Daugert v. Pappas*, 104 Wn.2d 254, 260, 704 P.2d 600 (1985).

"Legal causation rests on policy considerations determining how far the consequences of a defendant's act should extend." *Blume*, 134 Wn.2d at 252. "It involves the question of whether liability should attach as a matter of law, even if the proof establishes cause in fact." *Id.* at 252. In our context, "proximate cause boils down to whether the client would have fared better but for the attorney's malpractice." *Lavigne v. Chase, Haskell, Hayes & Kalamon*, 112 Wn. App. 677, 683, 50 P.3d 306 (2002) (citing *Daugert*, 104 Wn.2d at 257; *Brust v. Newton*, 70 Wn. App. 286, 293-94, 852 P.2d 1092 (1993)).

██ "Collateral estoppel, also known as issue preclusion, 'prevents relitigation of an issue after the party estopped has had a full and fair opportunity to present its case.' " *Barr v. Day*, 124 Wn.2d 318, 324-25, 879 P.2d 912 (1994) (quoting *Hanson v. City of Snohomish*, 121 Wn.2d 552, 561, 852 P.2d 295 (1993)). The party asserting collateral estoppel must prove four elements: (1) the issue decided in the prior action is identical to the issue considered in the second, (2) the prior adjudication ended in a final judgment on the merits, (3) the party to be estopped was a party or in privity with a party to the prior action, and (4) application of collateral estoppel will not work an injustice against the party to be estopped. *Barr*, 124 Wn.2d at 325; *Hanson*, 121 Wn.2d at 561-62.

The parties here do not dispute that both lawsuits concern the identical issue, the meaning of paragraph 24 of the agreement. They dispute the second, third, and fourth

elements of collateral estoppel. Mr. Fearing prevails on each element.

To invoke collateral estoppel the bound party must have " 'had a full and fair opportunity' " to litigate the issue the first time around. *Barr*, 124 Wn.2d at 325 (quoting *Hanson*, 121 Wn.2d at 561). Mr. Fearing had no opportunity to litigate the meaning of paragraph 24 on his own behalf. He was not a party to the Franklin County litigation. Nor was Mr. Fearing in a position to intervene as a party. Instead, Paradise enlisted Mr. Fearing, its former agent, as a witness in its behalf in aid of the factual assertion that its intent was to have specific performance as an additional remedy.

The Franklin County court interpreted paragraph 24 of the agreement as a matter of law in an interlocutory ruling. While that may be the law of the Franklin County case, it is not the law of the Benton County case or a proper basis for Paradise's collateral estoppel arguments here. Even though the law of the case may form the basis for a collateral estoppel argument, the law of the case rule is discretionary and not applied when the result would be unjust. *Greene v. Rothschild*, 68 Wn.2d 1, 10, 414 P.2d 1013 (1966). Paradise did not seek discretionary review of the arguably erroneous interlocutory ruling or allow final judgment to be entered by the Franklin County court so it could appeal. Rather, Paradise opted to compromise and settle with the buyer instead of contesting the adverse ruling. For collateral estoppel purposes, the ruling was not a final judgment on the merits. Mr. Fearing was not a party or in privity with Paradise.

Moreover, in legal malpractice cases, it is the ordinary and accepted practice to have a "trial within a trial" to retry, or try for the first time, the merits of the case in which the alleged malpractice occurred to determine what a reasonable judge or finder of fact would have done absent the alleged malpractice. *See, e.g., Daugert*, 104 Wn.2d at 258-59; *Brust*, 70 Wn. App. at 293; *Halverson v. Ferguson*, 46 Wn. App. 708, 713, 735 P.2d 675 (1986). Applying

collateral estoppel here would unfairly deprive Mr. Fearing of his opportunity to argue the meaning of paragraph 24 of the agreement. Given all, we conclude the Benton County trial court did not err in rejecting Paradise's collateral estoppel argument.

### B. Interpretation of Paragraph 24 of the Earnest Money Agreement

The issue is whether the Benton County trial court erred in concluding Paradise's remedies were not limited by the language of paragraph 24 of the earnest money agreement (agreement) as was first determined by the Franklin County court.

Paradise contends the substantial evidence standard was appropriate in the trial court and is the standard here. But no findings of fact were entered by the Franklin County court and no oral decision sheds light here. Rather, we have a three-sentence conclusory memorandum decision indicating a legal interpretation. We apply a de novo standard of review to questions of law. *Rasmussen v. Bendotti*, 107 Wn. App. 947, 954, 29 P.3d 56 (2001).

Accordingly, our inquiry is whether the trial court interpreted paragraph 24 of the agreement correctly to allow specific performance. An appellate court's primary goal in interpreting a contract is to ascertain the parties' intent. *Anderson Hay & Grain Co. v. United Dominion Indus., Inc.*, 119 Wn. App. 249, 254, 76 P.3d 1205 (2003), *review denied*, 151 Wn.2d 1016 (2004); *Kenney v. Read*, 100 Wn. App. 467, 474, 997 P.2d 455, 4 P.3d 862 (2000). In determining the parties' intent, we will consider " 'the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of the respective interpretations advocated by the parties.' " *Berg v. Hudesman*, 115 Wn.2d 657, 667, 801 P.2d 222 (1990) (quoting *Stender v. Twin City Foods, Inc.*, 82 Wn.2d 250, 254, 510 P.2d 221 (1973)).

"Generally, what the parties intend is a question of fact." *Anderson Hay & Grain*, 119 Wn. App. at 255 (citing *Kenney*, 100 Wn. App. at 475). "However, the interpretation of an unambiguous contract is a question of law." *Stranberg v. Lasz*, 115 Wn. App. 396, 402, 63 P.3d 809 (2003) (citing *Mayer v. Pierce County Med. Bureau, Inc.*, 80 Wn. App. 416, 420, 909 P.2d 1323 (1995)). "A provision is not ambiguous merely because the parties suggest opposing meanings." *Stranberg*, 115 Wn. App. at 402 (citing *Mayer*, 80 Wn. App. at 421). Whether a contract provision is ambiguous is also a question of law subject to de novo review. *Stranberg*, 115 Wn. App. at 402.

"A court may look to parol evidence to explain an ambiguity in a contract." *Stranberg*, 115 Wn. App. at 402 (citing *State v. Nason*, 96 Wn. App. 686, 691, 981 P.2d 866 (1999)). Even if the contract language is clear and unambiguous, the trial court may consider extrinsic evidence for the limited purpose of determining the intent of the parties. *Berg*, 115 Wn.2d at 669; *Go2Net, Inc. v. CI Host, Inc.*, 115 Wn. App. 73, 84, 60 P.3d 1245 (2003); *Bort v. Parker*, 110 Wn. App. 561, 573, 42 P.3d 980, *review denied*, 147 Wn.2d 1013 (2002). The purpose of such evidence is to aid the trial court in interpreting what is contained in the contract and not for the purpose of proving intent independent of that contract. *Berg*, 115 Wn.2d at 669; *Go2Net*, 115 Wn. App. at 84.

"Admissible extrinsic evidence does *not* include (1) evidence of a party's unilateral or subjective intent as to the meaning of a contract word or term, (2) evidence that would show an intention independent of the contract, or (3) evidence that varies, contradicts or modifies the written language of the contract." *Bort*, 110 Wn. App. at 574; *accord Go2Net*, 115 Wn. App. at 84. We strive "to ascertain the meaning of what is written in the contract, and not what the parties intended to be written." *Bort*, 110 Wn. App. at 574 (citing *Confederated Tribes of Chehalis Reservation v. Johnson*, 135 Wn.2d 734, 752, 958 P.2d 260 (1998)); *see also Go2Net*, 115 Wn. App. at 85.

■■ ■■ Here, paragraph 24 of the agreement partly states that in the event of the buyer's default the seller "shall have the right" to repossess the property and "shall have the right" to sell the apple crop and keep the proceeds. Ex. 2, at 7-8. The provision further states partly that the seller "shall have no obligation" to refund the earnest money deposit. *Id.* at 8. By using the clauses "shall have the right" and "shall have no obligation" the paragraph unambiguously implies that the buyer has discretion to invoke the enumerated remedies. In other words, paragraph 24 of the agreement does not specify mandatory and exclusive remedies. Rather, it reserves the seller's right to invoke the enumerated remedies. No language in the agreement states the remedies are exclusive.

This interpretation is consistent with the long-held rule in Washington that a liquidated damages clause in a real estate purchase and sale contract does not foreclose the remedy of specific performance absent language in the contract specifying liquidated damages to be the sole and exclusive remedy. *Asia Inv. Co. v. Levin*, 118 Wash. 620, 624-27, 204 P. 808 (1922); *McCutchen v. Brink*, 129 Wash. 103, 104-07, 224 P. 605 (1924). The proper function of a liquidated damages provision is to limit the nonbreaching party's recovery of monetary damages, not to deprive the nonbreaching party of the right to specific performance. *Jenson v. Richens*, 74 Wn.2d 41, 47, 442 P.2d 636 (1968); *Asia Inv.*, 118 Wash. at 625-26.

The foregoing authorities are persuasive in the real estate purchase and sale context. Paradise relies upon an inapposite labor contract case, *United Glass Workers' Local No. 188 v. Seitz*, 65 Wn.2d 640, 642, 399 P.2d 74 (1965), which reasons a specific remedy provision is presumably the sole remedy. *Asia Investment* and its progeny control here.

■■ RCW 64.04.005, the statute governing earnest money deposits, does not aid Paradise. If the earnest money deposit does not exceed five percent of the purchase price, and the earnest money agreement contains the required

language, a provision in the agreement providing that forfeiture of the earnest money deposit is the "seller's sole and exclusive remedy" in the event of the purchaser's breach "is valid and enforceable, regardless of whether the seller incurs any actual damages." RCW 64.04.005(1)(a).

However, when the earnest money deposit is greater than five percent of the purchase price, "then the seller shall have all rights and remedies otherwise available at law or in equity as a result of the failure of the purchaser, without legal excuse, to complete the purchase." RCW 64.04.005(2). Here, the earnest money deposit exceeded five percent of the purchase price ($100,000 earnest money on approximately $1.745 million) according to the trial court. In passing, we note the Franklin County Court did not mention RCW 64.04.005 in its decision, however, the parties and the Benton County court did discuss its applicability, and we have done so as well to acknowledge the arguments.

As for the extrinsic evidence of intent in the record reflecting the parties' subjective thoughts on the matter, it is not proper evidence under the context rule. *Go2Net*, 115 Wn. App. at 84; *Bort*, 110 Wn. App. at 574. A more objective body of evidence is the accumulation of offers and counteroffers volleyed back and forth between the parties. The original earnest money agreement contained statutory language. Paradise's counteroffer proffered a remedies clause stating the seller "can" repossess the property. Exs. 4, 6, 7. Stormy Mountain proposed the "seller shall have all remedies due under law." Ex. 5. The end result was paragraph 24, which we previously reasoned did not preclude multiple remedies, including specific performance.

The objective evidence suggests the parties did not intend to exclude specific performance. The focus of negotiation was whether repossession would be an express remedy, not an exclusive one. Paragraph 24 reflects that optional intent. Paradise urges us to impermissibly add language to the contract. *See Go2Net*, 115 Wn. App. at 84; *Bort*, 110 Wn. App. at 574 (extrinsic evidence cannot be used to vary or

520

modify the written words of the contract). Given all, Paradise's contentions are unpersuasive.

In sum, the trial court correctly reasoned the Franklin County court erred. Paradise could have challenged the earlier trial court's erroneous memorandum decision. It chose not to do so, thus giving up an opportunity to have the error rectified. Paradise cannot say as a matter of law that the error resulted in the unsatisfactory settlement with Stormy Mountain. Hence, Paradise fails to establish the legal causation element of its legal malpractice claim.

Affirmed.

KATO, C.J., and SCHULTHEIS, J., concur.

Review denied at 153 Wn.2d 1027 (2005).