930 P.2d 921 (1996)
84 Wash.App. 755
Elmer JOHNSON and his marital community; Robert Lenhart and his marital community; d/b/a Little Deli Mart, Appellants,
v.
M.P. YOUSOOFIAN and Jane Doe Yousoofian, his wife, and the marital community composed thereof, Respondents.
No. 35860-0-I.
Court of Appeals of Washington, Division 1.
December 16, 1996.
Order Granting in Part Motion to Publish January 29, 1997.
*922 David Balint and David Gossard, De Funis & Balint, P.S., Seattle, for Appellants.
Jeffrey Broihier, Broihier & Wotipka, Seattle, for Respondents.

OPINION
COLEMAN, Judge.
Elmer Johnson and Robert Lenhart argue that the trial court erred in holding that their landlord, M.P. Yousoofian, had no implied duty to act in good faith under a lease provision that prohibited assignment without the landlord's consent. They also claim that the trial court erred in holding that they failed to prove tortious interference with a business expectancy, because without Yousoofian's consent to the lease assignment, a prospective sale of the lessees' business failed to close. We affirm.

FACTS
Johnson and Lenhart own and operate a business known as Little Deli Mart, which includes a number of stores that sell sandwiches and deli food. In 1982, they opened the first Little Deli Mart at 2701 Airport Way South, Seattle, Washington. This property was and is owned by M.P. Yousoofian, who granted Johnson and Lenhart a ten-year lease with an option for five additional years.
Sometime in 1991, Johnson and Lenhart agreed that they would sell their Little Deli Mart stores one at a time. By letter dated November 25, 1991, however, the lessees wrote to Yousoofian to express their desire to enter into a new ten-year lease for the Airport Way property. Although Yousoofian was initially only willing to grant the five-year extension under the original lease, he ultimately agreed to a new ten-year lease, which was executed on May 6, 1992.
The new lease included an assignment clause that was identical to that of the original lease. Paragraph 12 provided in relevant part:
Lessee shall not ... assign this lease or any part thereof without the written consent of the Lessor, or Lessor's agents. In the event of any assignment so consented to, a minimum charge of 10% of one month's rent shall be made by M.P. YOUSOOFIAN for their [sic] services in transferring or assigning this lease, and shall be paid by Lessee. This lease shall not be assignable by operation of law.
In June 1992, Johnson and Lenhart advised their real estate broker, Sam Yun, that they wished to sell the Airport Way business. Yun soon found a prospective purchaser, James Y. Lee, who agreed to purchase the business for $320,000, contingent upon Yousoofian's consent to a lease assignment. The purchase agreement stated a closing date of September 30, 1992. On August 18, 1992, the lessees sent a registered letter to Yousoofian informing him of the purchase terms and of his contractual right of first refusal, but they did not request consent to assign the lease to Lee.
On July 27, 1992, the Airport Way building's insurer, Unigard Insurance, had expressed concern to Yousoofian's agent, Susan Thompson, about perceived structural problems. Thompson inspected the building with Yousoofian on August 21, 1992. Yousoofian informed Thompson that the lessees would be making improvements on the building that would address Unigard's concerns. Thompson persuaded Unigard to continue insuring property. In an August 25, 1992, letter to the lessees, Yousoofian requested a prompt reply as to the date they would begin remodeling the building, but he did not mention the proposed sale of the business to Lee.
When the lessees failed to respond to this letter, Yousoofian mailed it again on September 8, 1992, with a postscript again requesting response to the remodeling question. The lessees replied by letter dated September 10, 1992, that they intended to repair a sagging canopy, but the letter made no mention of remodeling the building. On September 21, 1992, Yousoofian's attorney wrote to the lessees, reiterating his client's request *923 for a timetable of the expected remodel. Again, no reply followed.
On September 28, 1992, the lessees had still not requested Yousoofian's consent to assignment. They signed an addendum to the purchase and sale agreement with Lee, extending the closing date to October 15, 1992. The lessees' attorney then prepared a letter requesting Yousoofian's signature on an Assignment of Lease form. The letter, dated October 5, 1992, made no mention of remodeling.
On October 9, 1992, Yousoofian's attorney wrote a letter to the lessees' attorney, stating that Yousoofian had relied on the lessees' promise to remodel when he agreed to the new lease and that he would not discuss any lease assignment until the remodel matter was resolved. The lessees did not reply to this letter. On October 27, 1992, the lessees' attorney again requested Yousoofian's written consent to assignment, but the letter did not mention the remodel issue.
On October 27, 1992, a commercial lender approved Lee's purchase loan request subject to receipt of the written consent to lease assignment and a consent to encumber per Small Business Administration requirements. The lessees' attorney wrote to Yousoofian's attorney on October 30, 1992, again requesting consent to the assignment and offering to place $90,000 of the Little Deli Mart sale proceeds in escrow. Yousoofian's attorney responded by letter dated November 4, 1992, that Yousoofian would not consent to any assignment until the remodeling issue was resolved.
On November 4, 1992, Lee offered to further extend the sale closing date, but lowered his purchase offer to $300,000. Johnson and Lenhart rejected the offer. Their attorney again wrote to Yousoofian's attorney requesting a consent to assignment, offering $8,000 as consideration. Yousoofian rejected this offer by letter dated November 9, 1992. The parties made no further communications.
On November 17, 1992, Johnson and Lenhart commenced this action for declaratory relief and damages for breach of lease and intentional interference with business expectancy. Six days later, the Lee purchase and sale agreement was rescinded. On June 3, 1993, the court granted partial summary judgment for the lessees, holding that the lease contained no requirement that the lessees remodel the premises. The order provided that Yousoofian's right to refuse consent to assignment was governed by lease paragraph 12, and reserved all other issues for trial. Within two months, Yousoofian consented to an assignment of the remaining lease term to another purchaser, who bought the Airport Way Store for $235,000.
At trial, the court ruled that:
Paragraph 12 of the lease does not impose an obligation on the Defendant to consent to assignment of the lease. Paragraph 12 rather imposes a prohibition upon tenants from assigning the lease without the written consent of the landlord. Under Paragraph 12, the Defendant was legally privileged to withhold consent.
The court added that the implied covenant of good faith imposed no duty to consent to any proposed assignment without an express contractual obligation. Holding additionally that the lessees had failed to prove improper interference with a business expectancy, the court awarded $25,000 in attorney fees to Yousoofian, subject to an offset of $7,500 for the lessees' fees in the partial summary judgment proceeding. The award was made pursuant to a lease provision. The court denied the lessees' motion to reconsider.

ANALYSIS
The central issue here is whether the implied covenant of good faith requires a landlord to be reasonable in refusing consent to a lease assignment, when the lease prohibits assignment without the landlord's consent but imposes no explicit standard of conduct.
Paragraph 12 is an unqualified prohibition on assignment by the lessees without the landlord's consent. The lessees argue that under the implied covenant of good faith, a landlord may not arbitrarily refuse consent to proposed assignments. Yousoofian argues that paragraph 12 imposes no obligation to consent to any assignment, so that he has no duty to which the implied covenant of good faith can attach. Contract interpretation is a matter of law that this *924 court reviews de novo on appeal. Absher Constr. Co. v. Kent School Dist. 415, 77 Wash.App. 137, 890 P.2d 1071 (1995). We agree with Yousoofian and affirm.
This issue was resolved by the Supreme Court in Alwen v. Tramontin, 131 Wash. 78, 228 P. 851, 40 A.L.R. 551 (1924), and Coulos v. Desimone, 34 Wash.2d 87, 208 P.2d 105 (1949). Both cases held that a lease's unqualified requirement of the landlord's consent to the tenant's assignment imposes no duty on the landlord to be reasonable in refusing consent. Alwen, 131 Wash. at 81, 228 P. 851; Coulos, 34 Wash.2d at 98-99, 208 P.2d 105. No subsequent Washington case has revisited the issue. But since Alwen and Coulos were decided, courts have recognized an implied duty to perform all contractual duties in good faith. E.g., Miller v. Othello Packers, Inc., 67 Wash.2d 842, 844, 410 P.2d 33 (1966). The dispute here centers on the effect of this development on the reasoning of Alwen and Coulos.
In Alwen, tenants leased an apartment house for $1,000 per month. Alwen, 131 Wash. at 79, 228 P. 851. The lease contained an assignment clause almost identical to paragraph 12 at issue in this case:
"Neither this lease nor any part thereof shall be assigned ... without the written consent of the lessors, or their agents, being indorsed thereon. But in case an assignment of this lease is consented to by said lessors, a charge of not to exceed ten percent of one month's rent shall be made by the lessors for said assignment."
Alwen, 131 Wash. at 79, 228 P. 851. The original tenants subsequently assigned the lease, with the landlord's consent, to John Alwen. Alwen, 131 Wash. at 79, 228 P. 851. Alwen then contracted to sell the lease to another party for $400. Alwen, 131 Wash. at 79, 228 P. 851. When Alwen sought the landlord's consent to the assignment, the landlord demanded $800 consideration, which Alwen paid under protest. Alwen, 131 Wash. at 79, 228 P. 851. After the assignment was complete, Alwen brought suit against the landlord to recover $700, the difference between the amount he paid the landlord and the assignment charge the lease required. Alwen, 131 Wash. at 79, 228 P. 851.
The Supreme Court held that despite the provision for a ten percent charge, the landlord had acted within his rights in exacting greater consideration for his consent. Alwen, 131 Wash. at 80, 228 P. 851. It reasoned that the lease, requiring the landlord's consent before the lease could be assigned, imposed no duty on the landlord. Alwen, 131 Wash. at 80-81, 228 P. 851. Thus, imposing conditions on his consent was not a legal basis for complaint, "however much [Alwen] or others may think the exaction was not justified in morals." Alwen, 131 Wash. at 80, 228 P. 851.
In 1949, the Supreme Court affirmed the view that a landlord's consent may be arbitrarily refused. Coulos v. Desimone, 34 Wash.2d at 99, 208 P.2d 105. The court acknowledged that lease covenants requiring the landlord's consent to assignment are restraints on alienation and should be strictly construed. Coulos, 34 Wash.2d at 95, 208 P.2d 105. But it held that because nothing in the contract qualified the prohibition on assignment without consent, the landlord had "the full and arbitrary right to refuse to give his consent to an assignment, irrespective of the character of the proposed assignee and although he is actuated by mere caprice or whim.'" Coulos, 34 Wash.2d at 98, 208 P.2d 105 (quoting 32 Am.Jur. Landlord & Tenant, § 343 (1941)).
Although Alwen and Coulos have never been expressly overruled, Johnson and Lenhart argue that the court's subsequent recognition of the implied duty of good faith and fair dealing in the performance of all contractual duties should alter their result. They concede that the duty of good faith "exists only in relation to the performance of specific contract terms and does not obligate [a] party to accept new obligations," citing Miller v. U.S. Bank of Washington, 72 Wash. App. 416, 425, 865 P.2d 536 (1994). But they argue that Yousoofian assumed the obligation to consent to reasonable assignments under the contract.
The lessees point to Yousoofian's contractual right of first refusal concerning any offer to purchase the Airport Way store. They claim that, reading the contract as a whole, *925 this provision is "rendered meaningless" if Yousoofian has the right to thwart the sale of the business by refusing consent to assign the lease to the prospective buyer. They conclude that the right of first refusal provision proves that the lease contemplated the possible sale of the Little Deli Mart, and thus imposes a duty to consent to a contemporaneous lease assignment.
The lessees' argument must fail. The implied duty of good faith is derivative, in that it applies to the performance of specific contract obligations. Miller, 72 Wash. App. at 426 n. 5, 865 P.2d 536; see also Betchard-Clayton, Inc. v. King, 41 Wash. App. 887, 890, 707 P.2d 1361, review denied, 104 Wash.2d 1027 (1985). If there is no contractual duty, there is nothing that must be performed in good faith. Contrary to the lessees' characterization of the trial court's ruling in this case, it did not create an exception to the good faith requirement for landlord-tenant leases. This lease simply does not impose an obligation on the landlord to consent to any assignment sought by the lessees. We observe that the parties to a lease are free to negotiate a standard governing the landlord's decision to grant or refuse consent. See, e.g., Ernst Home Center, Inc. v. Sato, 80 Wash.App. 473, 476, 910 P.2d 486 (1996) (lease providing that consent to assignment "shall not be unreasonably withheld").
Johnson and Lenhart correctly point out that a growing number of courts have adopted the Restatement view that landlords cannot unreasonably withhold consent under assignment clauses like paragraph 12. Restatement of Property Second § 15.2(2) (1977). But this is the minority view and contrary to established Washington law. This court is bound by the holdings in Alwen and Coulos. While giving landlords the right to arbitrarily refuse consent to a lease assignment may lead to harsh or inequitable results in some cases, we are not at liberty to overrule Supreme Court precedent.
This conclusion forecloses the lessees' argument that the trial court erroneously dismissed their tortious interference claim. Because Yousoofian had an absolute privilege to refuse consent to assignment under the lease, we affirm the judgment for Yousoofian on this tort claim.
The tort of interference with a business expectancy prohibits wrongful interference of valid contractual expectancies by third parties. The prima facie elements are: (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that the defendant interfered for an improper purpose or used improper means; and (5) resultant damage. Sintra, Inc. v. City of Seattle, 119 Wash.2d 1, 28, 829 P.2d 765, cert. denied, Robinson v. City of Seattle, 506 U.S. 1028, 113 S.Ct. 676, 121 L.Ed.2d 598 (1992). Once these elements are established, the interferor bears the burden of legally justifying the interference or establishing a claim of privilege. Pleas v. City of Seattle, 112 Wash.2d 794, 774 P.2d 1158 (1989).
The trial court held that Yousoofian was legally privileged to withhold consent to assignment of the lease under paragraph 12. Johnson and Lenhart's challenge to this conclusion is based on the earlier partial summary judgment order, which rejected Yousoofian's claim for rescission for the lessees' failure to remodel the premises. They claim that this order removed Yousoofian's "only excuse" to refuse consent. While the order precluded Yousoofian from asserting the alleged oral agreement, paragraph 12 of the lease gives Yousoofian the right to refuse consent to any assignment for any reason.
We affirm.
The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.
WEBSTER and COX, JJ., concur.