FILED
COURT OF APPEALS
DIVISION II

2015 JUN 23 AM 8: 32

STATE OF WASHINGTON

DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| WILLIAM HOLDNER, RANDALL WILLIAM HOLDNER, HOLDNER FARMS, and HOLDNER FARMS WASHINGTON, <br><br> Appellants, <br><br> v. <br><br> PORT OF VANCOUVER, USA, a Washington municipal corporation, <br><br> Respondent. | No. 46154-4-II <br><br><br><br><br> UNPUBLISHED OPINION |

MAXA, J. — William Holdner, Randall Holdner, Holdner Farms, and Holdner Farms Washington (the Holdners) appeal the trial court's order granting the Port of Vancouver's (Port) motion for summary judgment on their claims related to the Port's destruction of a mobile home and damage to silage. The destruction followed execution of a writ of restitution on agricultural land the Holdners had leased from the Port. The Holdners argue that the trial court erred in granting summary judgment because (1) the trial court improperly based its ruling on inadmissible hearsay evidence, and (2) the Port had a duty under its lease agreement with the Holdners and under tort law to preserve the mobile home and silage. We disagree and affirm the trial court's order granting summary judgment.

## FACTS

The Holdners leased property along the Columbia River from the Port, which they used for cattle ranching and feed crop cultivation and storage. This lease was governed by a written

lease agreement. The lease agreement included an early termination provision that gave the Port the power to terminate the lease at any time, subject to a 90-day notice requirement.

The Holdners leased and used the property for several years. A mobile home was on the property at the beginning of the lease, which was gifted to the Holdners by its prior owner. The Holdners made substantial improvements to the mobile home, incurring costs exceeding $19,000 plus labor to install those improvements.

On May 12, 2006, the Port sent the Holdners notice that it was terminating the lease pursuant to the early termination provision. The notice stated that the lease would terminate on August 15, 2006.

The Holdners sued the Port to prevent termination and remained on the land after August 15. The Port filed an unlawful detainer action and moved for summary judgment. The two suits were consolidated, and the trial court resolved the case by finding the Holdners in unlawful detainer and issuing a writ of restitution. The Port executed the writ of restitution on November 9, 2006, and retook possession of the land. The Holdners appealed the trial court's decision to this court, and we affirmed in February 2008.

At the time the Port executed the writ in November 2006, various items of the Holdners' personal property remained on the land. The Port's executive director, Todd Coleman, walked through the land with Randall Holdner, identified which items the Holdners wished to keep, and made a list of those items. The Port told the Holdners it would give them 45 days to remove the listed property.

Among the items not on the list of property to be preserved were the mobile home and harvested feed crops the Holdners had been storing in a silage pit. According to Coleman's

2

declaration, a sheriff's deputy told him during the walkthrough that the mobile home was in a hazardous condition and should be destroyed and removed from the land. On November 13, the Port destroyed the mobile home.

On November 30, the utility company shut off electrical service to that portion of the land. The silage pit was protected from flooding by an electric pump on that portion of the land that would divert wastewater away from the pit. At some point after November 30, the silage was flooded, contaminated by wastewater, and effectively destroyed. The Holdners believed that the Port instructed the utility company to shut off power to the land, and claimed that a utility company employee, Jason Hutcheson, had confirmed this over the phone. Hutcheson at his deposition and Coleman in a declaration stated that the utility company had acted on its own due to unpaid electrical service bills.

The Holdners subsequently sued the Port for damages resulting from the destruction of the mobile home and the silage. They asserted claims for breach of the lease agreement, breach of the covenant of good faith and fair dealing, and negligence.

The Port moved for summary judgment, which the trial court granted. In its order granting summary judgment, the trial court noted that it considered neither the Holdners' deposition testimony regarding Hutcheson's hearsay statements nor evidence of the sheriff's deputy's hearsay statements to Coleman concerning the condition of the mobile home.

The Holdners appeal the trial court's order granting summary judgment.

## ANALYSIS

### A.   SUMMARY JUDGMENT STANDARD

We review a trial court's summary judgment order de novo, performing the same inquiry as the trial court. *Vernon v. Aacres Allvest, LLC*, 183 Wn. App. 422, 427, 333 P.3d 534 (2014), *review denied*, 182 Wn.2d 1006 (2015).  We view all facts and reasonable inferences drawn from those facts in the light most favorable to the party that did not move for summary judgment – in effect, we give the nonmoving party the benefit of every doubt. *Id.*  If there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law, we will affirm the trial court's summary judgment order. *Lakey v. Puget Sound Energy, Inc.*, 176 Wn.2d 909, 922, 296 P.3d 860 (2013).

The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Lee v. Metro Parks Tacoma*, 183 Wn. App. 961, 964, 335 P.3d 1014 (2014).  A moving defendant can meet this burden by showing that there is an absence of evidence to support the plaintiff's case. *Id.*  The burden then shifts to the plaintiff to come forward with sufficient evidence to establish the existence of each essential element of the plaintiff's case. *Id.*  If the plaintiff does not submit such evidence, summary judgment is appropriate. *Id.*  The nonmoving party – here, the Holdners – may not rely on speculation or argumentative assertions that unresolved factual issues remain. *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008).

### B.   CONSIDERATION OF HEARSAY EVIDENCE

The Holdners claim that the trial court erred in granting summary judgment based on inadmissible hearsay evidence.  Although the Holdners present no specific argument on this claim, they apparently are referring to a sheriff's deputy's statement about the condition of the mobile home.

4

However, the trial court made it clear in its summary judgment order that the deputy's statement was immaterial to its decision to grant summary judgment and that it did not consider that evidence. Therefore, we reject the Holdners' claim that the trial court's summary judgment order was based on inadmissible hearsay evidence.

C.    DUTY TO PRESERVE PERSONAL PROPERTY

The Holdners argue that the Port had a duty to preserve the mobile home and the silage both under the terms of the lease agreement and under negligence law. For the reasons stated below, we hold that the Port owed no such duty to the Holdners, and therefore that the Port was not liable for the destruction of the mobile home and the damage to the silage.

1.    Contractual Duty

The Holdners claim the Port breached contractual duties by destroying the mobile home and failing to protect the silage. They argue that (1) the Port breached an affirmative obligation under the Lease Agreement to reasonably allow them to remove the mobile home and silage, and (2) the Port failed to uphold its duty to act in good faith in performance of the contract. We disagree with both arguments.[1]

a.    Lease Agreement Terms

The Holdners argue that the express terms of the lease agreement obligated the Port to preserve the mobile home and the silage. We disagree.

---

[1] The Port argues that it had no continuing obligations under the lease agreement because it was terminated according to its terms on August 15, 2006. However, the provision of the lease agreement relevant to the Holdners' appeal arguably seems designed to survive termination for an unspecified period. *See* Clerk's Papers at 152 (using the triggering language "upon the termination of this lease or any extension thereof"). For purposes of our analysis, we assume without deciding that the Port remained bound by the provisions upon which the Holdners rely.

### i. Mobile Home

The Holdners argue that the lease agreement required the Port to allow them to remove the mobile home because the Port agreed to allow them to remove any improvements on the land. Section 5 of the lease agreement provided that

> The LESSEE shall have the privilege of adding special leasehold improvements to the agricultural facilities and other improvements on said property, subject to the approval of the PORT which shall not be unreasonably withheld. The LESSEE shall be entitled to remove all or any of the improvements placed on said property by the LESSEE upon the termination of this lease or any extension thereof.

Clerk's Papers (CP) at 152.

The Holdners contend that they made improvements to the property by making repairs and improvements to the mobile home. But the "said property" to which section 5 refers was the *leased real property*, as described in an exhibit to the lease agreement. Because both the Holdners and the previous owner of the mobile home treated it as personal property rather than a fixture on the land, it was not part of the leasehold. *See SSG Corp. v. Cunningham*, 74 Wn. App. 708, 710-11, 875 P.2d 16 (1994) (characterizing structures erected on land as personal property when they were treated as personal property when erected). Therefore, section 5 did not cover the mobile home, which was the Holdners' personal property and was not subject to the lease agreement.

Even if the mobile home itself could be considered an improvement to the property, it clearly was not "placed on said property" by the Holdners. When the Holdners first took possession of the land, the mobile home was already situated on it. And it was undisputed below that the mobile home was not part of the leasehold and was not the Holdners' property when they took possession. The Holdners gained ownership of the mobile home after the previous owner gifted it to them, but they apparently never moved it. Because section 5 of the lease agreement gave the Holdners the right to

remove only improvements "placed on said property" during the term of the lease, it did not extend to the mobile home.

Any improvements to the mobile home were not improvements to the leasehold. Therefore, we hold that the Port had no contractual obligation under the lease agreement to allow the Holdners to recover any such improvements or the mobile home in its entirety.

### ii. Silage

The Holdners also appear to argue that the Port's contractual obligation to allow the Holdners to harvest crops growing at the time of termination included an obligation to preserve the silage. The lease agreement provided:

> The PORT shall give at least ninety (90) days written notice to the LESSEE of its intention to terminate said lease and in addition, shall give the LESSEE an opportunity to remove all of its growing crops or in lieu thereof, the PORT shall pay the LESSEE the value of said crops which cannot be harvested by reason of the early termination of said Lease.

CP at 156. Under this provision, the Port was obligated to allow the Holdners to remove any unharvested crops under cultivation at the time of termination. But the provision is expressly limited to "growing crops." The silage consisted of *harvested* crops, which are not encompassed by this language.

The Holdners appear to interpret "growing crops" to include stored, harvested crops. Because this interpretation is plainly inconsistent with the language of the lease agreement, we hold that the Port had no express contractual duty to preserve the silage.

### b. Implied Duty of Good Faith

The Holdners seem to argue that the Port also violated its duty of good faith and fair dealing in performance of the lease agreement. We disagree.

"Under Washington law, '[t]here is in every contract an implied duty of good faith and fair dealing' that 'obligates the parties to cooperate with each other so that each may obtain the full benefit of performance.' " *Rekhter v. Dep't of Soc. & Health Servs.*, 180 Wn.2d 102, 112-13, 323 P.3d 1036 (2014) (quoting *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 569, 807 P.2d 356 (1991)). However, this duty extends only to performance of agreed-upon obligations under the contract. *Rekhter*, 180 Wn.2d at 113. "If there is no contractual duty, there is nothing that must be performed in good faith." *Johnson v. Yousoofian*, 84 Wn. App. 755, 762, 930 P.2d 921 (1996).

The Holdners appear to argue that the Port gave them insufficient time to remove their personal property from the land before destroying it. They made this argument more cogently below, noting that "[f]ull performance of the contract would reasonably include the ability to remove personalty from the leased premises." CP at 28. But the lease agreement is silent as to personal property other than unharvested crops under cultivation. Regardless of whether it was reasonable to allow the Holdners to remove their other personal property – including the mobile home and the silage – the lease agreement imposed no obligations on the Port regarding any such property.

Full performance of the terms of the lease agreement did not require preservation of the mobile home or the silage. Therefore, we hold that the Port owed the Holdners no implied duty under the guise of good faith to preserve those items for the Holdners to remove.

2. Negligence Duty of Care

The Holdners appear to argue that the Port is liable under a negligence theory because it directed the utility company to shut off power to the leased property, resulting in the destruction of the silage. We hold that the Port owed the Holdners no tort duty to preserve the silage after

8

terminating the lease and that the Holdners did not present sufficient evidence that the Port was involved with shutting off the power.

To sustain a negligence claim, the Holdners must show, among other things, that the defendant owed them a duty of care. *Munich v. Skagit Emergency Commc'ns Ctr.*, 175 Wn.2d 871, 877, 288 P.3d 328 (2012). Whether any applicable duty exists is a question of law. *Eastwood v. Horse Harbor Found., Inc.*, 170 Wn.2d 380, 389, 241 P.3d 1256 (2010).

No Washington court has held that a commercial or agricultural landlord has a tort duty to preserve a tenant's personal property after executing a writ of restitution. In the residential context, landlords do have such a duty, which is imposed by statute. *See* RCW 59.18.312(1); *Parker v. Taylor*, 136 Wn. App. 524, 526, 150 P. 3d 127 (2007). But no similar statute applies to commercial or agricultural leases. The Holdners provide no authority that would support such a duty in the commercial or agricultural context. Therefore, we hold that the Port owed the Holdners no duty to preserve the silage. *See* RAP 10.3(a); *Joy v. Dep't of Labor & Indus.*, 170 Wn. App. 614, 629, 285 P.3d 187 (2012) (holding that we need not consider issues not properly argued).

Even if the Port had a duty to preserve the silage, the Holdners presented no evidence that the Port was involved in shutting off the power to the property. William Holdner testified at his deposition that a utility company employee told him that the Port had directed the company to shut the power off, but the trial court properly excluded this testimony as hearsay not subject to any exception. The only admissible evidence on the matter – deposition testimony from the utility employee with whom William Holdner spoke – showed that the Port never directed the utility company to shut the power off. Based on this evidence, the trial court correctly decided that the evidence did not support a genuine dispute as to this matter.

9

Because the Port owed the Holdners no tort duty to preserve the silage and because the Holdners did not produce admission evidence that the Port directed that the power be shut off, the Holdners' negligence claim fails as a matter of law.

We affirm the trial court's grant of summary judgment in favor of the Port.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

WORSWICK, P.J.

LEE, J.