# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| NEW VISION PROGRAMS INC., a Washington corporation, | No.  46914-6-II |
| Appellant, | |
| v. | |
| STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES; and RANDY ROBERTS, individually, | UNPUBLISHED OPINION |
| Respondent. | |

WORSWICK, J. — New Vision Programs, Inc. owned and operated residential homes for foster children under a contract with the Department of Social and Health Services (DSHS). After becoming concerned about the children's welfare, DSHS removed many children from New Vision's homes, and in June 2013, DSHS chose not to renew the contract.  New Vision sued DSHS under multiple theories and the superior court granted DSHS's motions for summary judgment dismissal.

New Vision now appeals the summary judgment dismissal of its breach of contract claim against DSHS, arguing that the superior court erred because genuine issues of material fact exist regarding whether DSHS violated the implied duty of good faith and fair dealing.  We disagree that the contract implied any of the duties of good faith that New Vision argues, and we affirm the superior court.

FACTS

DSHS regulates the foster care of children in Washington. New Vision, a Washington corporation, owns and operates residential homes that provide behavior rehabilitation services (BRS) for foster children. BRS "is a temporary intensive wraparound support and treatment program for youth with extreme, high level service needs . . . used to safely stabilize youth and safely move them to permanency or less intensive services." Clerk's Papers (CP) at 512.

In 2010, New Vision and DSHS entered into a client service contract, which the parties renewed annually in 2011 and 2012. The contract at issue here started on July 1, 2012 and ended on June 30, 2013. It governed DSHS's placement of children into New Vision's homes, and it required DSHS to pay New Vision "only for authorized services provided in accordance with this Contract." CP at 533. The contract allowed DSHS to "request services from the Contractor on an as-needed basis," but the contract did not "obligate [DSHS] to authorize services from the Contractor." CP at 533. The contract provided that New Vision would provide services such as housing, food, and BRS to children who were placed into a New Vision home.

The contract stated that the length of stay of a child at New Vision's facilities "will be based on the individual needs of the youth and may not exceed the term of 12 months, unless approved in writing by the CA [DSHS (Children's Administration)] Regional Administrator or designee." CP at 543. To determine the planned length of a child's stay at New Vision's homes, the contract provided that the "Contractor and CA shall mutually agree and establish a targeted exit date, for a child to transition from BRS. . . . This mutually agreed upon exit date should be determined at the child's initial case staffing meeting, held within 30 days of entry." CP at 543.

The contract provided for suspending New Vision's performance under certain

circumstances:

> DSHS may, without prior notice, suspend the Contractor's performance of the Contract if the Contractor . . . is investigated by DSHS or a local, county, state, or federal agency regarding any matter that, if ultimately established, could either:
>
> a.  Result in a conviction for violating a local, state, or federal law, or
>
> b.  In the sole judgment of DSHS, adversely affect the delivery of services under this Contract or the health, safety or welfare of DSHS clients.

CP at 535.

Finally, the contract included termination provisions.  It provided that either party could

terminate the contract with 30 days' notice; specifically, DSHS could terminate "in whole or in

part when it is in the best interest of DSHS by giving the Contractor at least thirty (30) calendar

days' written notice."  CP at 525.  The contract also permitted DSHS to immediately terminate

the contract "for default" if DSHS had a reasonable basis to believe New Vision failed to protect

the health and safety of the children, breached any contract term, or violated any law or

regulation.[1]  CP at 525-26.

In late 2012, DSHS became concerned about some children's welfare in New Vision's

homes.  Between November 2012 and March 2013, DSHS entered into several compliance

agreements with New Vision in an attempt to rectify conditions in New Vision homes.  DSHS

also began a comprehensive investigation of New Vision's homes.  After this investigation,

DSHS decided between April and June 2013 to remove many of the children from New Vision's

---

[1] If it was later determined that New Vision was not in default, the contract provided that "termination shall be considered a termination for convenience."  CP at 526.

homes and to stop placing children there due to possible licensing violations and allegations of child neglect. In June 2013, the contract expired and DSHS chose not to renew it.

New Vision sued DSHS for a declaratory judgment and recovery of damages for breach of contract and defamation. Regarding breach of contract, New Vision argued that DSHS violated an implied duty of good faith. DSHS twice moved for a summary judgment of dismissal. The superior court granted DSHS's motions for summary judgment, dismissing each claim. New Vision appeals only the dismissal of its breach of contract claim.

ANALYSIS

I. SUMMARY JUDGMENT PRINCIPLES FOR CONTRACT INTERPRETATION

We review a superior court's summary judgment order de novo, performing the same inquiry as the superior court. *Vernon v. Aacres Allvest, LLC*, 183 Wn. App. 422, 427, 333 P.3d 534 (2014), *review denied*, 182 Wn.2d 1006 (2015). We view all facts and reasonable inferences drawn from those facts in the light most favorable to the party that did not move for summary judgment. *Vernon*, 183 Wn. App. at 427. If there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law, we affirm the superior court's summary judgment order. *Lakey v. Puget Sound Energy, Inc.*, 176 Wn.2d 909, 922, 296 P.3d 860 (2013).

Summary judgment on the interpretation of a contract is "proper where 'the parties' written contract, viewed in the light of the parties' other objective manifestations, has only one reasonable meaning.'" *Spradlin Rock Prods., Inc. v. Pub. Util. Dist. No. 1 of Grays Harbor County*, 164 Wn. App. 641, 655, 266 P.3d 229 (2011) (quoting *Hall v. Custom Craft Fixtures, Inc.*, 87 Wn. App. 1, 9, 937 P.2d 1143 (1997)). Where there are no disputed material facts and no extrinsic evidence presented on the issue, we decide the meaning of a contract as a matter of

law. *Snohomish County Pub. Transp. Benefit Area Corp. v. FirstGroup Am., Inc.*, 173 Wn.2d 829, 834, 271 P.3d 850 (2012). We review the interpretation of an unambiguous contract de novo as a question of law. *Stranberg v. Lasz*, 115 Wn. App. 396, 402, 63 P.3d 809 (2003). We view contracts as a whole, interpreting particular language in the context of the entire contract. *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. 706, 713, 334 P.3d 116 (2014).

## II. DUTY OF GOOD FAITH

New Vision argues that DSHS owed it a duty of good faith and fair dealing under five specific terms of the contract. We disagree.

### A. *Good Faith Principles*

An implied duty of good faith and fair dealing obligates the parties to a contract to cooperate with each other so that each may obtain the contract's full benefit. *Rekhter v. Dep't of Soc. & Health Servs.*, 180 Wn.2d 102, 112, 323 P.3d 1036 (2014). However, the implied duty of good faith and fair dealing does not impose a free-floating obligation of good faith on the parties. *Rekhter*, 180 Wn.2d at 113. Instead, it "arises when one party has discretionary authority to determine a future contract term," which term the party is obligated to perform. *Rekhter*, 180 Wn.2d at 112-13.

This duty does not add to or contradict express contract terms. *Rekhter*, 180 Wn.2d at 113. And as explored below, if a contract gives a party *unconditional* authority to determine a term, no duty of good faith and fair dealing attaches to that term. *Rekhter*, 180 Wn.2d at 119-20; *Johnson v. Yousoofian*, 84 Wn. App. 755, 762-63, 930 P.2d 921 (1996).

*Rekhter* is illustrative. In *Rekhter*, DSHS entered into contracts providing public assistance for in-home care for individuals with disabilities. 180 Wn.2d at 108. The contracts

5

provided that DSHS would pay in-home care contractors for services included in the client's service plan. 180 Wn.2d at 108. Because the contracts were drafted before each client had a service plan, "key terms such as tasks to be performed and authorized hours are left undefined until long after the contract is executed." 180 Wn.2d at 108. A jury found that DSHS violated the implied duty of good faith and fair dealing by reducing the hours it would authorize for live-in providers. 180 Wn.2d at 111. Our Supreme Court affirmed this jury verdict because

> DSHS has a *specific contractual obligation* to determine and pay providers for hours authorized in the service plans. . . . [A]t the time that DSHS and an individual provider executed a provider contract, neither DSHS nor the provider knew what services would be needed by the clients or how much would be paid to the providers. These provisions give DSHS the discretion to set a future contract term: the quantity of hours and the types of services for which providers will be compensated.

180 Wn.2d at 113-14 (emphasis added). Thus, because DSHS had discretion to set a future contract term which it had a specific obligation to perform, the implied duty of good faith and fair dealing applied to that term.

By contrast, no implied duty of good faith and fair dealing exists where a party has unilateral authority to do or not do something under a contract. For example, in *Johnson*, Division One of this court considered whether the implied duty of good faith and fair dealing applied to a commercial lease's assignment clause. 84 Wn. App. at 756-57, 759. The clause prevented the tenant from assigning the lease without the landlord's written consent, but the landlord was not required to give consent. 84 Wn. App. at 757. Division One of this court held that the duty of good faith applies only to the performance of specific contract obligations. 84 Wn. App. at 762. Therefore, because the commercial lease did not obligate the landlord to

6

consent to an assignment, instead giving him the absolute privilege to refuse consent, there was no implied duty of good faith and fair dealing. 84 Wn. App. at 762-63.

Likewise, contract provisions permitting a party to cancel an agreement at will do not imply a duty of good faith. In *Mayer v. Pierce County Medical Bureau, Inc.*, 80 Wn. App. 416, 421-22, 909 P.2d 1323 (1995), we held that there was no implied duty of good faith in canceling where the contract provided that either party could cancel with 30 days' notice. *See also Myers v. Dep't of Soc. & Health Servs.*, 152 Wn. App. 823, 828-30, 218 P.3d 241 (2009) (finding no duty of good faith when there is a termination for convenience clause).

B.      *New Vision's Contract with DSHS*

This case turns on whether a duty of good faith and fair dealing is implied under several terms of DSHS's contract with New Vision. Whether a contract term includes an implied duty of good faith and fair dealing depends on whether DSHS had unconditional authority to set contract terms. *Rekhter*, 180 Wn.2d at 114. New Vision argues that an implied duty of good faith applies to contract terms concerning the placement of children, stopping placement of children and removing them, the "Corrective Action Plan," setting the end date for a child's placement, and termination of the contract. Br. of Appellant at 15. Because there was no duty of good faith and fair dealing implied in these clauses, New Vision's argument fails.

1. *Placement of Children*

New Vision argues that the contract provided DSHS with the discretionary authority to place children in New Vision's homes; accordingly, it argues that the duty of good faith and fair dealing applied to the placement of children. We disagree.

The contract stated that DSHS may authorize services "as[ ]needed." CP at 533. The contract stated: "[DSHS] may request services from the Contractor on an as-needed basis. This Contract does not obligate [DSHS] to authorize services from the Contractor." CP at 533. This contract clearly provided DSHS with the unconditional authority to place or not place children in New Vision's homes to receive New Vision's services. There was no specific obligation in the contract requiring DSHS to place children into New Vision homes. Because DSHS had unilateral authority to place children in New Vision's homes under the contract, no implied duty of good faith and fair dealing attached to this contract term. *Johnson*, 84 Wn. App. at 762.

2. *Stop Placement Order and Removal of Children*

New Vision next argues that there was an implied duty of good faith and fair dealing in the contract's term allowing DSHS to stop the placement of children and to remove children from the homes. We disagree.

In support of this argument, New Vision points to the following contract term:

DSHS *may, without prior notice*, suspend the Contractor's performance of the Contract if the Contractor . . . is investigated by DSHS or a local, county, state, or federal agency regarding any matter that, if ultimately established, could either:

a. Result in a conviction for violating a local, state, or federal law, or

b. *In the sole judgment of DSHS*, adversely affect the delivery of services under this Contract or the health, safety or welfare of DSHS clients.

8

CP at 535 (emphasis added). New Vision argues that this term gave DSHS discretion "to define what circumstances give rise to the issuance of a stop placement order."[2] Br. of Appellant at 14. This is incorrect.

To the extent New Vision argues that DSHS did not have unconditional authority to stop the placement of new children in its homes, we reject that argument above. And to the extent New Vision argues that DSHS did not have unconditional authority to remove children from New Vision homes, this argument fails as well. The contract term New Vision now cites did not reduce DSHS's unconditional authority to remove existing children. Instead, this contract term gave DSHS unconditional authority to suspend the contract and to determine what would adversely affect the delivery of services. Accordingly, no implied duty of good faith and fair dealing attached. *Johnson*, 84 Wn. App. at 762.

3. *Corrective Action Plan*

New Vision next argues that DSHS owed it an implied duty of good faith regarding the issuance and administration of a Corrective Action Plan. We disagree.

The contract read in relevant part: "In the event that DSHS identifies deficiencies in Contractor's performance under this Contract, DSHS *may, at its option*, establish a Corrective Action Plan." CP at 535 (emphasis added). This term did not obligate DSHS to identify deficiencies, nor did it obligate DSHS to establish a Corrective Action Plan. Accordingly, no duty of good faith attached to DSHS's issuance of a Corrective Action Plan. *Rekhter*, 180 Wn.2d at 113; *Johnson*, 84 Wn. App. at 762.

---

[2] There is no "stop placement order" in our record. Thus, we do not know the precise procedure relevant to a "stop placement." It appears that a "stop placement" involves at least the decision not to place additional children, and it may also initiate the removal of children already placed.

The contract continued: "When presented with a Corrective Action Plan, Contractor agrees to undertake the actions specified in the plan within the timeframes given to correct the deficiencies. Contractor's failure to do so shall be grounds for termination of this Contract." CP at 535. This gave New Vision an obligation under the contract, which obligation was triggered when DSHS presents it with a Corrective Action Plan. But it did not obligate DSHS to do anything. Nor did this term obligate DSHS to terminate the contract if New Vision failed to undertake the Corrective Action Plan's actions. It merely provided that the failure to do so was grounds for termination; it did not obligate DSHS to take any action. Accordingly, nothing in this term implied a duty of good faith on DSHS. *Johnson*, 84 Wn. App. at 762.

4. *Determining End Date of Child's Stay*

New Vision next argues that the contract implied a duty of good faith in removing children from New Vision's homes because it required DSHS to agree with New Vision in setting an end date for the child's stay. We disagree.

The contract provided in relevant part that the parties would work together to determine the length of a child's stay in New Vision's residences. Specifically, it read:

> Length of stay will be based on the individual needs of the youth and may not exceed the term of 12 months, unless approved in writing by the CA Regional Administrator . . . . The Contractor and CA *shall* mutually agree and establish a targeted exit date . . . . This mutually agreed upon exit date should be determined at the child's initial case staffing meeting, held within 30 days of entry.

CP at 543 (emphasis added). This term obligated DSHS to do something: it was required to work with the contractor to establish a targeted exit date at the initial case staffing meeting. Therefore, as in *Rekhter*, this term obligated DSHS to use its discretion to mutually set an exit date. *See* 180 Wn.2d at 113-14. Thus, there was an implied duty of good faith and fair dealing

10

attached to the parties' setting of a planned exit date for a child. *See* Br. of Resp't at 26 (agreeing that this term included an implied duty respecting the setting of an exit date).

But New Vision does not argue that DSHS violated the implied duty of good faith and fair dealing when negotiating any child's exit date. Instead, it argues that this term obligated DSHS to use good faith when deciding to remove a child, even in an emergency. But we interpret contracts as a whole, viewing any particular language in the entire contract's context. *Viking Bank*, 183 Wn. App. at 713. Therefore, we do not view this term of the contract in isolation.

When we view the contract as a whole, it is clear that this term governed only the initial plan of how long a child should stay at New Vision's facilities. By contrast, when DSHS determined that reasons existed to terminate the contractor's performance, it had sole discretion to do so without notice under the stop placement provision. Thus, the contract contemplated that DSHS retained the exclusive authority to stop placement when it determined that reasons existed to do so. *See* WAC 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 (allowing DSHS to remove a child immediately without notice to the foster care provider in "emergency situations").

In summary, while the implied duty of good faith applied to DSHS's obligation to mutually agree upon a target exit date when a child entered the placement, this implied duty did not attach to the contract term allowing DSHS, at its sole discretion, to remove children from New Vision homes. Accordingly, this claim fails.

5. *Termination of Contract*

Finally, New Vision argues that there was an implied duty of good faith in terminating the contract. We disagree.

11

New Vision argues that DSHS effectively terminated the contract when it removed the children from its homes during the term of the contract. But the language of the contract made clear that the contract expired on June 30, 2013. The removal of children before that date did not terminate the contract.[3]

In conclusion, none of these specific contract terms obligated DSHS to act. New Vision misstates the law by arguing that DSHS had an implied duty of good faith because it had discretion to determine when it would act. Instead, it had unconditional authority to determine whether to act at all. It was under no obligation to place, retain, or replace children, or to issue a Corrective Action Plan or to terminate the contract. Thus, no duty of good faith attached to these terms. Put another way, the parties bargained for an agreement wherein DSHS maintained considerable authority to take unilateral action in certain circumstances.[4] Because the parties had no agreement obligating DSHS to do the actions New Vision complains of, as a matter of law no duty of good faith and fair dealing was implied. *See SAK & Associates, Inc. v. Ferguson Const., Inc.*, 189 Wn. App. 405, 416, 357 P.3d 671 (2015); *Johnson*, 84 Wn. App. at 762. Therefore, we affirm the summary judgment.[5]

---

[3] Even if DSHS terminated the contract before its expiration, no implied duty of good faith attached to the termination provisions in the contract. This is because provisions permitting a party to cancel an agreement at will do not imply a duty of good faith and the contract here allowed DSHS to terminate at will. *Mayer*, 80 Wn. App. 422.

[4] Our interpretation of the contract is consistent with statutes and rules obligating DSHS to protect the health and safety of the children in its custody. *See* RCW 74.13.031(6), (7). Our reading of the contract, and these statutes, reflect the policy goal that DSHS should have the ability to immediately react to potentially harmful situations.

[5] New Vision argues that if no implied duty of good faith applied, DSHS would have "carte blanche" to make decisions about children's placement based on improper factors such as race.

No. 46914-6-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Johanson, C.J.

_____
Lee, J.

---

Discrimination based on race would violate the law and the constitution, but that consideration has nothing to do with whether *this contract* imposed any implied duty of good faith.