NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUL 15 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

HOLD SECURITY, LLC, Wisconsin
Limited Liability Company,

         Plaintiff - Appellant,

 v.

MICROSOFT CORPORATION, a
Washington corporation,

         Defendant - Appellee.

No. 24-2768

D.C. No.
2:23-cv-00899-MJP

MEMORANDUM[*]

Appeal from the United States District Court
for the Western District of Washington
Marsha J. Pechman, District Judge, Presiding

Argued and Submitted July 9, 2025
Seattle, Washington

Before: HAWKINS, GRABER, and BENNETT, Circuit Judges.

Plaintiff Hold Security, LLC, timely appeals the district court's Rule

12(b)(6) dismissal of its complaint against Defendant Microsoft Corporation,

which asserted claims under Washington law for (1) breach of contract; (2) breach

of the implied covenant of good faith and fair dealing; and (3) deceptive or unfair

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

acts or practices in violation of Washington's Consumer Protection Act ("CPA"), Wash. Rev. Code § 19.86.020. Plaintiff also challenges the denial of leave to amend with respect to the CPA claim. Reviewing de novo the dismissal of Plaintiff's claims and for abuse of discretion the denial of leave to amend, D'Augusta v. Am. Petroleum Inst., 117 F.4th 1094, 1100 (9th Cir. 2024), cert. denied, 145 S. Ct. 1478 (2025), we affirm.

1. Plaintiff's factual allegations, accepted as true, do not establish that Defendant had a contractual duty to limit its use of the "Account Credential Data" ("data") that Plaintiff provided. We agree with the district court's conclusion that Defendant owns the data because the data qualify as a "deliverable" under the contract. But even assuming that the data constitute "Supplier IP," the contract—which, as Plaintiff concedes, is fully integrated—explicitly grants Defendant a "worldwide, nonexclusive, perpetual, [and] irrevocable" license to use the data in the ways about which Plaintiff complains.[1] Nothing in section 3(b) of the statement of work modifies that license by prohibiting Defendant from using the data in any particular way.[2] Nor can Plaintiff rely on alleged pre-contract

---

[1] The parties' agreement consists of three documents that are relevant here: a master supplier services agreement, a statement of work, and a non-disclosure agreement. Unless a specific document is named, the term "contract" refers to all three documents collectively.

[2] To the contrary, the contract characterizes section 3(b) as "describ[ing] the details of the Services . . . [Plaintiff] will perform or deliver to [Defendant],"

representations to contradict the licensing provision.  See Brogan & Anensen LLC v. Lamphiear, 202 P.3d 960, 961 (Wash. 2009) (en banc) (per curiam) (explaining that extrinsic evidence may not be used to "add to, subtract from, modify, or contradict the terms of a fully integrated written contract").

Plaintiff thus fails to state a breach-of-contract claim.  See Fitness Int'l, LLC v. Nat'l Retail Props., LP, 524 P.3d 1057, 1063 (Wash. Ct. App. 2023) ("A breach of contract is actionable only if the contract imposes a duty."  (quoting Nw. Indep. Forest Mfrs. v. Dep't of Lab. & Indus., 899 P.2d 6, 9 (Wash. Ct. App. 1995))).

2.  Plaintiff's implied-covenant claim is also premised on the theory that Microsoft violated data-use limitations allegedly contained in the contract.  Given Plaintiff's failure to plead the existence of those limitations, as discussed above, the district court properly dismissed this claim.  See, e.g., Johnson v. Yousoofian, 930 P.2d 921, 925 (Wash. Ct. App. 1996) ("The implied duty of good faith is derivative, in that it applies to the performance of specific contract obligations.  If there is no contractual duty, there is nothing that must be performed in good faith." (internal citations omitted)), as amended (Jan. 9, 1997).

3.  To establish its CPA claim, Plaintiff must plead facts sufficient to prove, among other elements, that the allegedly deceptive or unfair conduct affects the

---

(emphasis added), a description that in no way alludes to any duties owed by Defendant.

public interest. See Gordon v. Virtumundo, Inc., 575 F.3d 1040, 1065 (9th Cir. 2009) (stating the legal standard). Where, as here, a complaint involves a private dispute, the public-interest inquiry turns on four non-dispositive factors, see Michael v. Mosquera-Lacy, 200 P.3d 695, 700 (Wash. 2009) (en banc) (listing those factors), with the ultimate question being whether there is a "real and substantial" likelihood that "additional plaintiffs have been or will be injured in exactly the same fashion," id. (emphasis added) (first quoting Eastlake Constr. Co. v. Hess, 686 P.2d 465, 477 (Wash. 1984) (en banc), and then quoting Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 719 P.2d 531, 538 (Wash. 1986) (en banc)).

Plaintiff has failed to allege facts sufficient to prove that such a likelihood exists. Although one could plausibly infer from the complaint that Defendant both engaged in the allegedly deceptive or unfair practice in the course of its business and actively solicited Plaintiff, any additional advertising that Defendant might have carried out was presumably aimed at other technology companies, not at the broader public. See Falcon Props. LLC v. Bowfits 1308 LLC, 478 P.3d 134, 142 (Wash. Ct. App. 2020) (concluding that the deception did not affect the public in part because the defendants marketed to "investors and not the general public"). And though one could also plausibly conclude that Plaintiff held less bargaining power than did Defendant, Plaintiff—given its level of sophistication and its

business experience—is not "representative of bargainers subject to exploitation and unable to protect themselves." Hangman Ridge, 719 P.2d at 540; see Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc., 935 P.2d 628, 635 (Wash. Ct. App. 1997) (concluding conduct did not affect the public because the experience of other potential plaintiffs "indicated they were better able than the average consumer to judge for themselves the risks associated" with the defendant's business proposals). At bottom, this case—involving a "long-standing [business] relationship" and alleged wrongful acts that took place in a private setting—more closely resembles "a breach of contract claim between private parties," rather than a matter of public concern. Cashmere Valley Bank v. Brender, 116 P.3d 421, 428 (Wash. Ct. App. 2005), aff'd, 146 P.3d 928 (Wash. 2006) (en banc).

Because additional allegations would not change the inherently private nature of this dispute, the district court did not abuse its discretion in denying Plaintiff leave to amend. See Lathus v. City of Huntington Beach, 56 F.4th 1238, 1243 (9th Cir. 2023) (explaining that denying leave to amend is not an abuse of discretion if granting leave would have been futile).

**AFFIRMED.**